UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATHWARD, NA,

    Plaintiff,

v.

INLET TRUCKING, LLC, and
REGINALD KRUG,

    Defendants.

Case No. 24-10811
Honorable Laurie J. Michelson

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [19]**

In February of 2022, Inlet Trucking, LLC, entered into a contract with Pathward, National Association, so that Inlet could finance a new long-haul truck for its business. (ECF No. 16, PageID.94–95.) Reginald Krug, the sole member of Inlet, personally guaranteed the loan. (*Id.* at PageID.95.) The transaction did not go well. On October 20, 2023, Pathward filed a lawsuit in Michigan state court against Inlet and Krug alleging that the Defendants breached their contract by defaulting on monthly payments. (ECF No. 1-3, PageID.19.)

On March 28, 2024, Defendants filed a notice of removal to this Court. (ECF No. 1.) After filing their notice, however, Defendants failed to timely respond to Pathward's complaint. So Pathward sought and obtained an entry of default against both Defendants. (ECF No. 10.) Defendants then moved to set aside the clerk's entry of default. (ECF No. 15.) But "because service of process on the Defendants was proper

and the Defendants fail[ed] to satisfy Rule 55(c)'s good cause standard," the Court denied Defendants' motion. (ECF No. 18, PageID.167.)

Now before the Court is Pathward's motion for default judgment. (ECF No. 19.) Defendants oppose the motion. (ECF No. 20.) The motion is fully briefed and does not require further argument. *See* E.D. Mich. LR 7.1(f); *see also* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688 (4th ed. 2024) ("Rule 55 does not require that testimony be presented as a prerequisite to the entry of a default judgment, and the court has discretion to determine whether a hearing is necessary.").

## I.

To grant default judgment, the Court must ensure that (1) it has both subject matter jurisdiction over the claim and personal jurisdiction over the Defendants, (2) the Defendants were properly served, and (3) Pathward is entitled to the relief sought. *See C.A.T. Glob. Inc. v. OTT Transp. Servs.*, 737 F. Supp. 3d 620, 625 (E.D. Mich. 2024). Because Defendants have defaulted, they have conceded the truth of the well-pled allegations in Pathward's complaint as to liability on all counts brought against them. Fed. R. Civ. P. 8(b)(6); *Thomson v. Wooster,* 114 U.S. 104, 111 (1885); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) ("Once a default has been entered by the Clerk's Officer, only a plaintiff's well-pleaded factual allegations are deemed admitted.").

Additionally, it is undisputed that the Court has diversity jurisdiction over the dispute, personal jurisdiction over the Defendants, and that the Defendants were properly served. Defendants' sole objection to the entry of default judgment is that

2

Pathward has not proven it is entitled to the amount of damages it seeks. Thus, Defendants request an evidentiary hearing and/or discovery to determine damages. (ECF No. 20, PageID.219.)

An evidentiary hearing is not required to determine the amount of damages for purposes of default judgment "if sufficient evidence is submitted to support the request for damages or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits." *Ayers v. Receivables Performance Mgmt., L.L.C.,* No 15-12082, 2016 U.S. Dist. LEXIS 132875, at *9 (E. D. Mich. Sept. 28, 2016); *see also Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). Here, Pathward seeks a judgment of $164,919.14. (ECF No. 19, PageID.172.) To reach that number, Pathward totaled: (1) Defendants' 50 remaining unpaid loan payments, less 2% per year for the present discounted value, totaling $180,769.56; (2) $1,709.19 in late fees; (3) $1,310.29 in per diem fees; and (4) $25.00 in return fees.[1] (*Id.* at PageID.171; ECF No. 19-4, PageID.195.) Pathward then subtracted $28,697.50—the net proceeds from the sale of the repossessed truck, which was sold at public auction. (ECF No. 19-4, PageID.195.) It finally added $9,802.60 in attorney's fees and costs, which it breaks down in an attorney's fees ledger attached to its motion. (ECF No. 19-5.)

---

[1] Pursuant to the parties' contract, Pathward may charge a $25 fee for each check or automatic payment that is returned for insufficient funds. (ECF No. 19-2, PageID.190.)

3

## II.

Defendants make three arguments why they believe the Court should not accept Pathward's damages calculation. None persuade.

First, Defendants say that Pathward failed to provide notice of the sale of the truck in violation of Uniform Commercial Code § 9-613(2)–(4).[2] (ECF No. 20, PageID.214–215.) For its part, Pathward concedes that it did not provide notice to Defendants. (ECF No. 22, PageID.225.) But not for lack of trying. And, says Pathward, Michigan law accounts for that. Indeed, under Michigan Compiled Laws § 440.9605(a)(iii), a secured party "does not owe a duty" to a debtor or obligor if the secured party does not "know how to communicate with that person."

The Court finds that Pathward's lack of notice falls comfortably within § 440.9605(a)(iii). It made many attempts to communicate with Defendant Krug but was unsuccessful—so much so that the state court granted its motion for alternative service. (*See* ECF No. 1-2, PageID.11.) "Defendants only resurfaced in March of 2024, when they filed a notice of removal—four months after the disposition of the collateral." (ECF No. 22, PageID.226.) In other words, despite many attempts, by the time Pathward could have provided notice to Krug, it was four months too late—the

---

[2] Throughout the briefing, Defendants cite Article 9 of the Uniform Commercial Code, while Pathward relies on Article 9 of the Michigan counterpart. Generally, the Court applies the substantive law of the forum state to actions brought pursuant to its diversity jurisdiction. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). This is a diversity case resulting from a breach of contract dispute—a contract which specified that it is "governed by the laws of the state of Michigan." (ECF No. 19-2, PageID.189.) Accordingly, the Court will apply Michigan law.

4

truck had already been sold. So the Court finds that Pathward's lack of notice of the sale is excused under Michigan law.

Second, Defendants say that Pathward "proffered no evidence that the sale [of the truck] was commercially reasonable." (ECF No. 20, PageID.216.) More specifically, Defendants take issue with the "drastic reduction in the price" between the amount Defendants paid for the truck ($164,960.00) and the amount the truck was ultimately sold for at auction ($32,500.00). (*Id.*) Pathward responds by explaining that the truck was sold "at a public auction through Ritchie Bros. Auctioneers . . . a global auctioneer, specializing in heavy equipment auctions." (ECF No. 22, PageID.227–228 (citing *Auction Events*, Ritchie Bros., https://perma.cc/5DAH-YDDN (last visited July 14, 2025)).) It explains that Ritchie Bros. inspected the truck prior to the sale, marketed the truck both online and in print, and ultimately sold the truck "in the usual manner and in a recognized market." (*Id.* at PageID.228.) Pathward also attaches the Inspection Report from Ritchie's evaluation of the truck. (ECF No. 22-2, PageID.234–238.)

The Court finds that Pathward has satisfied its burden to demonstrate the truck was sold in a commercially reasonable manner. Michigan Compiled Laws § 440.9627(2) grants secured parties wide discretion in deciding how to dispose of collateral—indeed, so long as the secured party sells the collateral "in the usual manner on any recognized market, at the price current in any recognized market at the time of the disposition, or otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the

5

disposition," the sale is commercially reasonable. Mich. Comp. Laws § 440.9627(2). Michigan law further specifies that "[t]he fact that a greater amount could have been obtained by a . . . disposition . . . at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the disposition . . . was made in a commercially reasonable manner." *Id.* § 440.9627(1).

Here, Pathward sold the truck at a public auction using a reputable auctioneering company with experience selling similar equipment. The fact that the truck ended up selling at a low price "is not of itself sufficient to preclude [Pathward] from establishing that the [sale] . . . was made in a commercially reasonable manner." *Id.*; *see Price v. Monroe Bank & Tr.*, No. 227118, 2002 WL 31928601, at *2–3 (Mich. Ct. App. Nov. 8, 2022) (per curiam). Indeed, a low price could indicate depreciation of the collateral or merely a lack of demand for the collateral in the market. But it does not, by itself, demonstrate that the sale was commercially unreasonable. And, aside from their aversions to the price for which the truck was ultimately sold, Defendants make no additional arguments as to why the sale of the truck at public auction by a professional large equipment auctioneering company would be commercially unreasonable.

Resisting this conclusion, Defendants point the Court to three non-binding cases that it says demonstrate that the Court should allow for the collection of more evidence prior to entry of default judgment. (ECF No. 20, PageID.217–218.) This is not a fair reading of those cases. First, Defendants point to *Larsen Leasing, Inc. v.*

*Thiele, Inc.*, 749 F. Supp. 821, 822 (W.D. Mich. 1990)—a case quite factually distinct from the matter at issue here. There, the court found that the plaintiff had failed to demonstrate that the collateral was sold in a commercially reasonable manner because the secured party sold the collateral to an "affiliated corporation" run by the "Chief Operating Principal" of the secured party. *Id.* at 824. Key to the court's decision was that there was "no evidence of what, if any, efforts were expended to seek out other" un-related buyers, and the corporate-affiliate buyer ended up selling the collateral to another third party just eight days after the initial sale for $8,000 more. *Id.* By contrast here, the public auction provided an opportunity for any interested buyer to try to obtain the truck and avoided a private sale to an interested corporate affiliate. The other two cases that Defendants rely on deal with questions presented under New York law and have little relevance here. *See Canal Air, LLC v. McCardell*, No. 11-11081, 2011 U.S. Dist. LEXIS 123572, at *9 (E.D. Mich. Oct. 26, 2011); *In re Excello Press*, 890 F.2d 896, 900–02 (7th Cir. 1989).[3]

That leaves Defendants' argument that Pathward did not provide "any evidence as to how it arrived at $28,697.50" and that "without evidence of the application of the sales proceeds, there is no evidence that the set-off alleged by [Pathward] is the correct amount." (ECF No. 20, PageID.218.) This issue is easily

---

[3] In citing *In re Excello Press*, Defendants provided a parenthetical that is actually another passage from *Canal Air*. (*See* ECF No. 20, PageID.217.) In any event, the Court has reviewed *In re Excello Press* and finds that it does not aid Defendants' argument. If anything, the opposite is true. *See In re Excello Press*, 890 F.2d at 905 (explaining that the "price obtained in a commercially reasonable sale"—there, at a public auction—"is not *evidence* of the market value . . . It *is* the market value.").

7

resolved by the evidence attached to Pathward's reply brief, including the auction settlement statement from Ritchie Bros., confirming that: (1) the truck was sold for $32,500.00, (2) there was an 11.5% commission fee totaling $3,737.50, and (3) there was a $65.00 "documentation fee." (ECF No. 22-3, PageID.239.) As Pathward correctly explains, Michigan Complied Laws § 440.9615(1)(a) dictates that cash proceeds from the disposition of property are first applied to "the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing" of the collateral. So $3,802.50 was subtracted from the $32,500.00 sale proceeds, leaving Defendants with a $28,697.50 offset. Accordingly, the Court finds that the "computation of actual damages" is the product of a "simple mathematical equation" and thus sees no need to hold an evidentiary hearing. *See Tomlinson v. E. Recovery & Remediation Grp., LLC*, No. 15-13606, 2019 U.S. Dist. LEXIS 51049, at *14 (E.D. Mich. Mar. 27, 2019); *McIntosh v. Check Resolution Serv.*, No. 10-14895, 2011 U.S. Dist. LEXIS 45265, at *10 (E.D. Mich. Apr. 27, 2011) ("An evidentiary hearing is unnecessary if sufficient evidence is submitted to support the request for damages, or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits." (citation omitted)).

### III.

For the reasons above, the Court GRANTS Pathward's motion for default judgment. (ECF No. 19.) A separate judgment will follow.

SO ORDERED.

Dated: July 17, 2025

8

        s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE